OPINION
{¶ 1} Kimberly A. Manalo, as Administrator of the Estate of Evelyn J. Sharp, deceased, is appealing from the decision of the Montgomery County Common Pleas Court granting summary judgment to defendant, Kemper Insurance Company.[1] The facts and the rationale of the trial court in granting summary judgment to Lumberman's are set forth in the following excerpts from the opinion of the trial court:
 "I. FACTS {¶ 2} "On May 7, 2001, the Plaintiff, Kimberly A. Manalo, Administrator of the estate of Evelyn J. Sharp, deceased, filed a Complaint against the Kemper Insurance Company. On June 6, 1999, Ms. Sharp was killed in a car accident as a result of the negligence of Annie M. Deeter, an underinsured motorist. At the time of the accident, the Complaint alleges that Ms. Sharp was an employee of Avon Products, Inc. (Avon), and that Avon was insured by Kemper Insurance Company under policies of commercial automobile liability and commercial general liability (CGL). As an employee, Ms. Sharp was allegedly insured for purposes of uninsured/underinsured (UM/UIM) motorist coverage. The Plaintiff makes a claim for UM/UIM coverage as the administrator of Ms. Sharp's estate and as her next of kin. She seeks an amount in excess of $25,000.00.
 {¶ 3} "On November 19, 2001, the Defendant filed a Motion for Summary Judgment asserting that it is entitled to summary judgment under its liability policy because New York, and not Ohio, law applies to the dispute. Even if Ohio law is held to be applicable, the Defendant seeks summary judgment because Ms. Sharp was an independent contractor, as opposed to an employee, of Avon. According to the Defendant, the Plaintiff is not entitled to coverage because Ms. Sharp was not an `insured' under its policies. Also, the Defendant contends that the CGL policy is not subject to Ohio's UM/UIM statute because it is not an `automobile policy' and it offers no UM/UIM coverage.
 {¶ 4} "The Defendant further asserts that Avon, `in the practical sense' is `self-insured' and therefore outside the purview of Ohio's UM/UIM statute. The Motion alleges that the Defendant is entitled to summary judgment because Avon selected lower Ohio UM/UIM coverage in its business auto policy, in the amount of $100,000.00. The Defendant asserts that, if the Court applies Linko v. Indemnity Company of North America
(2000), 90 Ohio St.3d 445, to the dispute, such application will interfere with vested contractual rights. Finally, the Defendant asserts that it is entitled to summary judgment based on the `other owned vehicle' exclusion contained in its CGL policy.
 {¶ 5} "The Plaintiff asserts that genuine issues of material fact exist as to whether the interpretation of the insurance policy between the Defendant and Avon `sounds in contract, not in tort.' Further, even if the interpretation sounds in contract, `a genuine issue of material fact exists concerning which state law will apply to the contract'; also, genuine issues of material fact exist as to whether Ms. Sharp was an employee or an independent contractor. Even if Ms. Sharp is determined to have been an independent contractor, `she is still covered under the Lumbermens [sic] insurance policy pursuant to the holding inScott-Pontzer.'
 {¶ 6} "The Plaintiff is allegedly further entitled to UM/UIM coverage because the Defendant's Business Auto Policy contains the same ambiguity identified in Scott-Pontzer, `specifically the provision regarding `who is an insured' `in the Drive Other Car Coverage endorsement. According to the Plaintiff, the CGL policy at issue is also an automobile insurance policy subject to Ohio's UM/UIM statute. The Plaintiff denies that Avon is self-insured `in the practical sense.' The Plaintiff also asserts that Avon's `rejection/selection form is not governed by House Bill 261,' and that even if the Bill applies to the form, Linko, supra, still applies and the Plaintiff is entitled to UM/UIM coverage as a matter of law. Finally, the Defendant allegedly is not entitled to summary judgment on the `other owned vehicle' exclusion." (Doc. 42).
 {¶ 7} The court then analyzed the choice of law issue raised by the defendant, which is that New York law and not Ohio law applies to the insurance contract entered into between Avon and Lumberman's. The court determined that Ohio law applies, and we find that was the correct decision.
 {¶ 8} The court then found that plaintiff's decedent was an independent contractor, and not an employee of Avon, and as such, was not an insured under the CGL policy and granted summary judgment as to that policy. This issue was not appealed by the plaintiff and is not before this court.
 {¶ 9} The trial court then found that while there was a genuine issue of material fact as to whether plaintiff's decedent was a named insured under the business auto policy, coverage was still not provided by that policy because the insured, Avon Products, Inc., the insured who selected the Lumberman's business auto policy for which the plaintiff is asserting a claim on behalf of her decedent, validly selected lower Ohio UM/UIM coverage in the amount of $100,000. The trial court analyzed this issue as follows:
 {¶ 10} "The Defendant asserts that it is entitled to summary judgment because the Decedent validly selected lower Ohio UM/UIM coverage in its Business Auto Policy in the amount of $100,000.00, and that retroactive application of Linko, supra, which requires that an offer form contain certain elements to be valid would interfere with vested contract rights. Further, because the Decedent's estate already received compensation in excess of this amount, the estate is allegedly not entitled to recover any amount from the Defendant. The Plaintiff asserts that UM/UIM coverage in the amount of the $2,000,000.00 Business Auto Policy limit is available by operation of law.
 {¶ 11} "The Business Auto policy became effective on April 1, 1999, and the Selection/Rejection Form was signed March 22, 1999. The proper statute to apply to determine the parties' rights is therefore R.C. 3937.18, as amended by H.B. 261 on September 3, 1997. R.C. 3937.18
provides that `[t]he schedule of limits approved by the superintendent may permit a named insured . . . to select uninsured and underinsured motorists coverages with limits on such coverages that are less than the limit of liability coverage provided by the automobile policy of insurance under which the coverages are provided.' The selection `shall be in writing and shall be signed by the named insured or applicant.' Finally, `a written, signed rejection of both coverages as offered under division (A) of this section, or . . . a written, signed selection of such coverages . . . shall be effective on the day signed, shall create a presumption of an offer of coverages . . . and shall be binding on all other named insureds, insureds, or applicants.'
 {¶ 12} "The Ohio Supreme Court in Linko, supra, addressed the issue of what language needed to be included in an uninsured/underinsured motorist coverage rejection form to meet the offer requirement of R.C.3937.18. The Court provided the following required elements for written offers: `a brief description of the coverage, the premium for that coverage, and an express statement of the UM/UIM coverage limits.'Linko, supra, at 449.
 {¶ 13} "Recent decisions, for example, Still v. Indiana InsuranceCompany (Feb. 25, 2002), Stark App. No. 00300, unreported, citing Pillov. Stricklin (Dec. 31, 2001), Stark App. No. 00204, unreported, have held that `the 1997 Amendments to R.C. 3937.18 did not eliminate the requirements set forth by the Ohio Supreme Court' in Linko. The Second District Court of Appeals, however, recently issued a decision contrary to the other courts, holding that the 1997 version of R.C. 3937.18
supersedes Linko's `requirements regarding a valid offer of UIM coverage.' Purvis v. Cincinnati Insurance Company et al. (April 12, 2002), Greene App. No. 2000-CV-0515, unreported. The Purvis court notes in its decision that `the Supreme Court recently certified a case regarding the applicability of Linko's requirements to the 1997 version of R.C. 3937.18. Kemper v. Michigan Mut. Ins. Co. (2002),94 Ohio St.3d 1435.'
 {¶ 14} "Pursuant to Purvis, supra, the Selection/Rejection Form is presumptively valid and became effective on March 22, 1999; it is in writing and signed by Stephen Truono, Avon's `authorized representative.' The Plaintiff has not provided any evidence to overcome the `presumption of an offer of coverages,' and according to the Form, Mr. Truono selected coverage in the amount of $100,000.00. Because this coverage limit is less than the $300,000.00 the Plaintiff has allegedly received, there is no coverage available to the Plaintiff under the Business Auto Policy. The Defendant's Motion for Summary Judgment as to the Business Auto Policy is granted.
 {¶ 15} "In the event a decision from the Supreme Court in Kemper
were to reverse or modify Purvis, further analysis is appropriate. As stated above, Still, supra, and Pillo, supra, held that `the 1997 Amendments to R.C. 3937.18 did not eliminate the requirements set forth by the Ohio Supreme Court' in Linko. In Linko, the Ohio Supreme Court addressed the issue of what language needed to be included in an uninsured/underinsured motorist coverage rejection form to meet the offer requirement of R.C. 3937.18(C). Id. The court provided the required elements for written offers: `a brief description of the coverage, the premium for that coverage, and an express statement of the UM/UIM coverage limits.' Linko, supra, at 449.
 {¶ 16} "The Defendant's Uninsured/Underinsured Motorist coverage Selection/Rejection Form briefly describes the coverage as follows:
 {¶ 17} "Uninsured Motorists Coverage provides payments for all sums the `insured' is legally entitled to recover as compensatory damages from the owner or driver of an `uninsured motor vehicle.' The damages must result in `bodily injury' or `property damage' sustained by the `insured' caused by an accident.
 {¶ 18} "The form defines an `uninsured motor vehicle,' and it also contains an express statement of the coverage limits as follows:
 {¶ 19} "Your policy has been issued with Uninsured Motorists Coverage at a limit equal to your liability Limit. You may choose to reject this coverage or select a limit not less than $25,000, which is legally required by the Ohio Financial Responsibility Law. If you choose a lower limit or reject this coverage, complete the bottom of this form and return it to your agent/broker.
 {¶ 20} "The available limits for Uninsured Motorists Coverage are as follows:
 {¶ 21} "$25,000 $100,000 $1,000,000
 {¶ 22} "$50,000 $250,000
 {¶ 23} "Under the Selection/Rejection section, the box next to the statement `I request Uninsured Motorists Coverage at the following limit _____________' is checked, and the amount $100,000 is typed on the line.
 {¶ 24} "The Form does not state the premium for the selected coverage. The Business Automobile Coverage Part Declarations page (pg. 000017) provides that Uninsured and Underinsured coverages are `included' in the $276,000 premium for liability coverage. It is unclear from the Selection/Rejection Form whether premiums for the other available limits would also be included in the liability premium, or whether a separate premium is required, for example, for a higher coverage. Because `a valid rejection requires a meaningful offer, i.e., an offer that is an offer in substance and not just in name,' Linko, supra, the Form does not satisfy the Linko requirements for failure to express the premium, or lack thereof, for the coverage. As the Form is invalid, UM/UIM coverage arises by operation of law in an amount equal to the amount of liability insurance provided in the Business Auto policy, $2,000,000."
 {¶ 25} The trial court was prescient in advance as to our holding in Purvis, supra.
 {¶ 26} On December 24, 2002, the Supreme Court answered the question certified to it in Kemper by holding, first, that the requirements of Linko relative to an offer at UM/UIM coverage are applicable to a policy of insurance written after an enactment of H.B. 261 [1997] and before S.B. 97[2001], but went on to answer in the negative the second question, as follows: "(2) If the Linko requirements are applicable, does, under [1997] H.B. 261, a signed rejection act as an effective declination of UM/UIM coverage, where there is no other evidence, oral or documentary of an offer of coverage?" Kemper v.Michigan Millers Mut. Ins. Co., 98 Ohio St.3d 162, 2002-Ohio-7101.
 {¶ 27} We agree with the trial court that the form signed by Avon, standing alone, does not meet the Linko requirements as it does not include a statement of the premium for the selected coverage. However, in the case before us, that form is not by itself determinative of the issue. Here, there is other evidence of an offer of coverage, in the form of an affidavit by Stephen Truono, who affirmed first that he was the director of Global Risk Management Insurance with Avon Products, Inc., and as such director was responsible for, among other things, purchasing automobile liability insurance as well as all other insurance for Avon Products, Inc. "As such, I had authority to elect uninsured/underinsured motorist coverage under Lumberman's Mutual Casualty Company's commercial automobile policy in the amount equal to the liability limits." He further avers that he had full authority to select/reject uninsured/underinsured motorist coverage, and he verified that he did select one of the lower Ohio UM/UIM limits with the commercial auto policy issued by Lumberman's to Avon Products, Inc. by signing the applicable form on March 22, 1999, which we note is prior to the accident at issue in this case. He further stated in his affidavit as follows: "At all times, I was fully aware of the requirements under the laws of Ohio with regard to UM/UIM coverage. In addition, I was informed of the increase in premiums that would be included in the policy if I were to elect a higher amount of UM/UIM coverage under the commercial automobile policy issued by Lumbermens to Avon Products, Inc." He further stated that at the time he executed the rejection/selection form, he was "aware that in Ohio, UM/UIM coverage was required to be offered to Avon Products, Inc.," and on behalf of Avon Products, he "knowingly and expressly selected $100,000 policy limits for UM/UIM coverage in Ohio." This affidavit is found as an exhibit to Lumberman's brief and found in the record as an exhibit to Lumberman's brief in opposition to a response by plaintiff regarding a submission of additional authority by Lumberman's. (Doc. 40).
 {¶ 28} We find that the form signed by the duly authorized representative of Avon (attached hereto as Exhibit A), taken together with the comprehensive affidavit of Avon's duly authorized representative, fully satisfy the requirements of Linko that Avon made an "express, knowing rejection of UM/UIM coverage" (Linko, supra, 449) and further made an express knowing acceptance of lower coverage in the amount of $100,000, with complete knowledge of the premiums to be charged, a description of the coverage, and an express statement of the UM/UIM coverage limits. (Id). We find it totally beyond reason to believe that a sophisticated large corporation, multi-state and perhaps multi-national, Avon Products, did not act knowingly and in full knowledge of all the requirements in accepting full UM/UIM coverage and in accepting the lower figure of such coverage. The insured in this case was not your average individual consumer buying insurance, but rather a very knowledgeable corporate entity which purchased multitudes of insurance policies with full knowledge of all their applicable requirements.
 {¶ 29} The plaintiff in her brief on appeal provided as the reason for her assignment of error that the trial court erred as a matter of law in granting summary judgment in favor of Lumberman's, the issue thatLinko applied to insurance policies written and issued after H.B. 261, and that the rejection/selection form at issue here did not comply with requirements of Linko. We overrule this assignment of error on the ground that the form, together with "other evidence, oral or documentary, of an offer of coverage" (Kemper, supra) satisfies all the Linko requirements in this case. We therefore affirm the decision of the trial court, not on the ground that it was based on our decision in Purvis, supra, but rather on the other ground that the rejection/selection by Avon Products here was in full compliance with the requirements of Linko and was with full knowledge of all the requirements for a valid rejection/selection decision. The estate of Evelyn Sharp is precluded from coverage because it has already received $300,000 from another insurance company, which exceeds the $100,000 policy limit selected by Avon in this case.
 {¶ 30} Judgment affirmed.
FAIN, P.J. and GRADY, J., concur.
[1] The action was originally filed against Kemper Insurance Company, but by a subsequent agreed entry, the parties and the court recognized that Kemper had been incorrectly identified, and that the proper name for the defendant is Lumberman's Mutual Casualty Company, and, it was, therefore, substituted in place of Kemper. (Doc. 13).